# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

PENNSYLVANIA MANUFACTURERS' )
ASSOCIATION INSURANCE COMPANY, )
  )
      **Plaintiff,** )
  )
v. ) Case No. 12-CV-273-CVE-TLW
  )
BRANDON LECHNER, NORTHSTAR )
MEMORIAL GROUP, LLC, FLORAL )
HAVEN FUNERAL HOME, INC., )
NORTHSTAR CEMETERY SERVICES )
OF OKLAHOMA, LLC,[1] NORTHSTAR )
FUNERAL SERVICES OF OKLAHOMA, LLC,)
and KEITH KENNEDY, )
  )
      **Defendants.** )

## OPINION AND ORDER

Now before the Court are the following motions: plaintiff's Motion for Judgment on the Pleadings (Dkt. # 37); Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 39); and Defendants' Cross Motion for Summary Judgment and Brief in Support (Dkt. # 46). Plaintiff Pennsylvania Manufacturers' Association Insurance Company (PMA) seeks summary judgment on its claim for declaratory relief that it has no duty to defend or indemnify defendants against a claim filed in state court by Brandon Lechner. PMA has also filed a motion for judgment on the pleadings as to certain defendants' counterclaims for declaratory relief, and defendants filed a motion for summary judgment on plaintiff's claim and defendants' counterclaim for declaratory relief.

---

[1] This defendant is misidentified in the original caption and complaint as "NorthStar Cemetary Services of Oklahoma, LLC." The word "cemetery" is misspelled. The defendants did not file a notice of party name correction, but the Court will not compound the error herein. The Court Clerk is directed to correct the case caption as above.

**I.**

Lechner was as an employee of NorthStar Memorial Group, LLC, NorthStar Cemetery Services of Oklahoma, LLC, NorthStar Funeral Services of Oklahoma, LLC (collectively the NorthStar defendants), and the Floral Haven Funeral Home, Inc. (Floral Haven). Lechner claims that, on January 4, 2010, he was inflating a tire and his supervisor, Keith Kennedy, directed him to inflate the tire to a "dangerous and hazardous level." Dkt. # 39-1, at 3. Lechner claims that the tire exploded and nearly killed him, and that he suffered severe personal injuries, mental and physical pain and suffering, and lost earning capacity as a result of the incident. Id. Lechner filed a workers' compensation claim and he recovered over $300,000 in workers' compensation benefits. Dkt. # 39-5.

On December 19, 2011, Lechner filed a civil case in the Tulsa County District Court, Oklahoma seeking actual and punitive damages from the NorthStar defendants, Kennedy, and Floral Haven. Brandon Lechner v. NorthStar Memorial Group, LLC et al., Tulsa County District Court, Case No. CJ-2011-7544. Lechner alleges that the "actions of [defendants] were intentional; that they were taken with the intent to injure Plaintiff, and they were taken with the knowledge that there was a substantial certainty that serious injury or death would occur to Plaintiff and/or other Floral Haven employees similarly situated." Dkt. # 39-1, at 3. He also alleges that defendants "intended for Plaintiff to be injured and also disregarded the knowledge that serious injury was certain or substantially certain to occur and intentionally exposed Plaintiff to that risk." Id. In support of this allegation, Lechner states that "Floral Haven and Kennedy knew or should have known that the manner in which they required work to be performed was in violation of [Occupational Safety and

2

Health Administration (OSHA)] standards." Id. Lechner seeks actual and punitive damages in excess of $75,000. Id. at 4.

PMA issued a Workers Compensation and Employers Liability Insurance Policy, policy no. 200900-62-86-64-5 (the Policy) to the NorthStar defendants, and the Policy was in effect from April 28, 2009 to April 28, 2010. Dkt. # 39-2, at 7. Floral Haven and Kennedy are not named insureds in the Policy.[2] The Policy contains two distinct types of coverage. Part One of the Policy provides workers' compensation insurance and Part Two of the Policy provides employers liability insurance. Id. at 84-85. Under the workers' compensation provisions of the Policy, PMA is obligated to indemnify the NorthStar defendants for "benefits required of you by the workers compensation law" and also to "defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance." Id. However, the duty to defend does not extend to a "claim, proceeding or suit that is not covered by this insurance." Id. The Policy also provides employers liability insurance for certain types of claims against the NorthStar defendants if the claim concerns a bodily injury that "arise[s] out of and in the course of the injured employee's employment . . . ." Id. at 85. PMA is obligated to defend the NorthStar defendants from "any claim, proceeding or suit against your for damages payable by this insurance," but PMA has no duty to "defend a claim, proceeding or suit that is not covered by this insurance." Id. Both the workers' compensation and the employers liability provisions of the Policy state that coverage is available only for "bodily injury by accident or bodily injury by disease." Id. at 84. The Policy does not define "accident."

---

[2]  Floral Haven has been dismissed as a party in this case and in the state court lawsuit. Dkt. # 35. PMA argues that Kennedy is not a named insured in the Policy, and Kennedy has not responded to this argument.

The NorthStar defendants demanded that PMA defend them against Lechner's claim, and PMA agreed to provide a defense to the NorthStar defendants while reserving its right to contest insurance coverage. Dkt. # 39-3. PMA advised the NorthStar defendants that:

> In reviewing the allegations of the Petition and the insurance policies, however, at this time it appears that there may be no coverage for this lawsuit under the policies of insurance issued by PMA to NorthStar Memorial. In particular, we wish to emphasize that there may be no coverage under the provisions of [the Policy] because:
>
> • coverage may be precluded because the allegations that the bodily injury was caused by intentional acts of the defendants may not qualify as bodily injury by "accident" under the policy; . . . .

Id. at 8. Two days after sending the reservation of rights letter to the NorthStar defendants, PMA filed this case seeking a declaratory judgment that it has no obligation to defend or indemnify the NorthStar defendants against Lechner's claim. The NorthStar defendants and Kennedy filed a counterclaim seeking a declaratory judgment that PMA is obligated to defend them against Lechner's claim in the state court lawsuit. Dkt. # 21.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

PMA argues that Lechner has alleged an intentional tort or Parret claim against the NorthStar defendants, and that this type of claim is not covered under the Policy because it does not arise out of an "accident." The NorthStar defendants respond that Lechner has alleged that he was injured due to their intentional acts, but some of his allegations sound in ordinary negligence. They argue that Lechner has also alleged a negligence claim, even if unintentionally, and some aspect of his lawsuit is a claim that is covered under the Policy. They claim that this gives rise to a duty by PMA to defend the NorthStar defendants against all claims asserted against them in the state court lawsuit. The parties dispute whether Texas or Oklahoma law applies to this insurance coverage dispute.

5

Before reaching the choice of law issue raised by the parties, the Court will initially consider the nature of Lechner's claim or claims against the NorthStar defendants. Lechner clearly alleges that he was injured as a result of defendants' intentional acts. See Dkt. # 39-1 ("The actions of [defendants] were intentional; they were taken with the intent to injure plaintiff, and they were taken with the knowledge that there was a substantial certainty that serious injury or death would occur to Plaintiff and/or other Floral Haven employees similarly situated."). It is undisputed that Lechner has sought and obtained workers' compensation benefits, and it is reasonable to assume that he has framed his civil claim as an intentional tort to avoid the exclusive remedy provision of the Oklahoma Workers' Compensation Act, OKLA. STAT. tit. 85, § 1 et seq. (OWCA). The exclusive remedy provision is now codified at OKLA. STAT. tit. 85, § 302, and it allows an injured employee to sue his employer in tort only in cases of intentional injury. Under § 302, "[a]n intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such an injury. Allegations or proof that the employer had knowledge that such injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort." OKLA. STAT. tit. 85, § 302(B). However, Lechner alleges that he was injured on January 4, 2010, and § 302 had not yet been enacted when the alleged injury occurred. On the date of the accident, the exclusive remedy provision was codified at OKLA. STAT. tit. 85, § 12, and it did not provide a specific standard for the level of intent that an injured employee was required to show to prove an intentional tort against his employer. In Parret v. UNICCO Serv. Co., 127 P.3d 572 (Okla. 2005), the Oklahoma Supreme Court adopted the "substantial certainty" standard and held that an injured employee could prove an intentional tort by showing that the employer "(1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to

6

result from the employer's conduct." Id. at 579. The substantial certainty standard remained in effect until it was legislatively overruled by a amended version of § 12 that took effect on August 27, 2010. See Shue v. High Pressure Transports, LLC, 2010 WL 4824560 (N.D. Okla. Nov. 22, 2010).

The NorthStar defendants argue that Lechner's allegations concerning the "substantial certainty" of injury or their alleged knowledge of this substantial certainty should not be considered as allegations in support of an intentional tort claim, because the substantial certainty test has been legislatively overruled by § 302. Dkt. # 43, at 19. However, the Court must consider the substantive law in effect on the date of the injury unless a statute evidences a clear legislative intent that the statute would be applied retroactively. CNA Ins. Co. v. Ellis, 148 P.3d 874, 876 (Okla. 2006) (applying workers' compensation law in effect at time of injury when the statute contained no express language that the Oklahoma Legislature intended for statute to apply retroactively). Section 302 contains no explicit language suggesting that the legislature intended for it to apply retroactively. Likewise, the amendment to § 12 did not apply retroactively, and cases filed by an injured worker in which the alleged injury occurred before August 27, 2010 are governed by the Parret standard. Coulson v. Jensen Int'l., Inc., 2012 WL 1990545 (N.D. Okla. June 1, 2012); Estes v. Airco Serv. Inc., 2012 WL 1899839 (N.D. Okla. May 24, 2012); Shue, 2010 WL 4824560 at *5. Thus, Lechner's allegations of substantial certainty are properly construed as allegations in support of an intentional tort claim under the OWCA and Parret.

The NorthStar defendants argue that Lechner alleges that defendants acted in violation of OSHA regulations, and that this could be construed as an attempt to assert a negligence claim. Merely referencing potential OSHA violations does not suggest that Lechner is alleging a

7

negligence-based claim. In fact, plaintiffs alleging Parret claims have routinely cited possible OSHA violations as evidence of an employer's knowledge or intent. Shue, 2010 WL 4824560 at *6; Parret v. UNICCO Servs. Co., 2006 WL 5999986 (W.D. Okla. Mar. 22, 2006). Although the Oklahoma Supreme Court has held that violations of government regulations do not independently "rise to the level of an intentional tort," this does not mean that such allegations are irrelevant to an intentional tort claim. Price v. Howard, 236 P.3d 82 (Okla. 2010). The fact of an OSHA violation, if sufficiently related to the incident causing the plaintiff's injury, may be relevant to show the employer's knowledge of hazard or the employer's intent to harm an employee. Torres v. Cintas Corp., 2010 WL 1411002 (N.D. Okla. Apr. 2, 2010). The Court also takes into account the context of Lechner's allegation of OSHA violations, and it is clearly intended to supplement his allegations that defendants acted with intent to harm him or with substantial certainty that he would be harmed. Dkt. # 39-1, at 3. The petition must be read as whole, rather than as piecemeal allegations as the NorthStar defendants have done, and the allegations concerning alleged OSHA violations are simply part of the Parret claim alleged by Lechner in the state court lawsuit.

It is clear that Lechner has alleged a single intentional tort claim against defendants and the Court must determine whether an intentional tort claim constitutes an "accident" as that term is used in the Policy. The parties dispute whether Oklahoma or Texas law applies in interpreting the insurance policy but, as the Court will explain, the outcome is the same under Oklahoma and Texas insurance law and it is unnecessary to engage in an extensive choice of law analysis.

Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas.

8

Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

Although the Policy does not define the term "accident," the Oklahoma Supreme Court has held that this term is unambiguous as a matter of law and it should be "construed and considered according to common speech and common usage of people generally." U.S. Fidelity & Guaranty Co. v. Briscoe, 205 Okla. 618, 621 (Okla. 1951). Citing a dictionary definition, the Oklahoma Supreme Court stated that an accident was as "event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency." Id.; see also Penley v. Gulf Ins. Co., 414 P.2d 305, 308 (Okla. 1966) ("an intentional or willful tort would

9

negative the existence of an accident . . ."). Applying Oklahoma law, the Tenth Circuit has held that intentionally causing bodily injury to another is not an accident or accidental injury. Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1297 (10th Cir. 1996).

In Evanston Ins. Co. v. Dean, 2009 WL 2972336 (N.D. Okla. Sep. 11, 2009), the court held that an intentional tort claim under the substantial certainty standard did not constitute an "accident" giving rise to insurance coverage under a commercial general liability policy. The plaintiff, Deric Dean, alleged that he was injured while using a mill machine and that his employer knew with substantial certainty that Dean would be injured if he used the machine. Id. at *1. Dean filed a Parret claim against his employer, ICES Corporation (ICES), and ICES demanded that its insurer, Evanston Ins. Co (Evanston) provide a defense against Dean's claims. Id. at *2. Evanston refused to provide a defense on the ground that Dean's claim did not arise out of an "occurrence," because Dean's injury was not caused by an accident or accidental conduct. Id. The insurance policy at issue in Dean defined an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 7. The court noted that a Parret claim based on the substantial certainty standard could be distinguishable from other intentional torts, such as assault or battery, but found that the level of intent necessary to allege and prove a Parret claim removed conduct giving rise to a Parret claim from the commonly accepted meaning of the term "accident." Id. at *8. In particular, a "necessary element of a Parret claim is that the employee's injury was substantially certain to occur and the employer was aware of the risk of injury . . . ." Id. at *7. Thus, the court found that conduct giving rise to a Parret claim could not be considered an "accident" and Evanston had no duty to defend ICES against Dean's Parret claim. In American Interstate Ins. Co. v. Wilson Paving & Excavating, Inc., 2010 WL 2624133 (N.D. Okla. June 25,

2010), the court cited Evanston as persuasive authority and found that a Parret claim was not covered by an employers liability insurance policy that applied to claims against an employer for "bodily injury by accident or bodily injury by disease." Id. at *1.

In this case, the Policy provides employer's liability insurance for claims arising out of "bodily injury by accident or bodily injury by disease."[3] Dkt. # 39-2, at 85. The NorthStar defendants have demanded that PMA provide a defense against Lechner's Parret claim filed in state court, and PMA has done so under a reservation of rights. However, the "Oklahoma Supreme Court in *Parret* made clear that the subset of cases that would follow from it were **intentional** torts." American Interstate Ins. Co., 2010 WL 2624133 at *5 (emphasis in original). An intentional tort is not an unexpected event or a chance happening but, instead, it is brought about by an intentional act of the defendant. To allege a Parret claim, a plaintiff must allege that the employer acted with knowledge that an injury was substantially certain to result from the employer's conduct or that the employer "desired to bring about the worker's injury." Parret, 127 P.3d at 579. There is no reasonable way to construe the term "accident" to include injuries that are the subject of a Parret claim, because a key element is of a Parret claim is that the employer actually intended to cause an injury or knew with substantial certainty that an injury would occur. These are not the type of "unexpected events" that fit within the definition of "accident" as the term was defined by the Oklahoma Supreme Court in U.S. Fidelity & Guaranty Co. The Court finds that the Parret claim alleged by Lechner is not a "bodily injury by accident" as a matter of Oklahoma law, and PMA has no duty to defend or indemnify the NorthStar defendants against this claim under Oklahoma law.

---

[3]   None of the parties argues that coverage is available under Part One of the Policy providing workers' compensation insurance, and the Court will focus solely on coverage under the employers liability insurance provided by the Policy.

The NorthStar defendants argue that Texas insurance law applies to this dispute and that PMA is obligated to defend the NorthStar defendants against Lechner's Parret claim under Texas law.[4] Under Texas law, courts "construe insurance contracts under the same rules applicable to contracts generally." Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). "If a written contract is amenable to a definite legal meaning, then it is unambiguous and will be enforced as written." Nautilus Ins. Co. v. County Oaks Apartments Ltd., 566 F.3d 452, 456 (5th Cir. 2009) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)). Under Texas law, the term "accident" is given its "accepted or commonly understood meaning" if the term is not defined in an insurance policy. Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8 (Tex. 2007). In Lamar, the Texas Supreme Court explained that an accident is "generally understood to be a fortuitous, unexpected, and unintended event." Id. An injury is "accidental if 'from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury . . . .'" Mid-Century Ins. Co. of Texas v. Lindsey, 997 S.W.2d 153, 155 (Tex. 1999). In contrast, an intentional tort is not an accident "regardless of whether the effect was unintended or unexpected." Lamar Homes, Inc., 242 S.W.3d at 8. The NorthStar defendants cite King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002), which describes an insurer's duty to defend:

> An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. This is the "eight corners" or "complaint allegation rule." "If a petition does not allege facts within the scope of coverage, an

---

[4]   The NorthStar defendants suggest that Texas law would also apply to Lechner's claims in the state court lawsuit, but they offer no authority to support this argument. Dkt. # 43, at 17. The choice of law issue concerns the application of Texas law in this contractual dispute, and Lechner's claim in the state court lawsuit is governed by Oklahoma tort and workers' compensation law.

12

> insurer is not legally required to defend against its insured." But we resolve all doubts regarding the duty to defend in favor of the duty.

Id. at 187 (citations omitted).

The Court has reviewed the pleadings in the state court lawsuit and the Policy, and finds that PMA would not be obligated to defend or indemnify the NorthStar defendants from Lechner's claim under Texas law. The NorthStar defendants argue that PMA is impermissibly relying on the merits of Lechner's claim as a basis to deny coverage. Dkt. # 43, at 12. However, the NorthStar defendants are mistaken. The Court has found that Lechner has alleged a single intentional tort claim against the defendants in the state court lawsuit, and PMA is not arguing the merits of the underlying claim by pointing out that Lechner's claim is an intentional tort. See supra at 5-7. The Policy provides coverage only for "bodily injury by accident." Texas courts have been clear that intentional torts do not constitute an "accident" as the term is generally understood. See CU Lloyds of Texas v. Main Street Homes, Inc., 79 S.W.3d 687, 693 (Tex. App. 2002); Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827-28 (Tex. 1997); Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973). Even if the Court had not found that a Parret claim was a true intentional tort, a deliberate action does not constitute an accident as a matter of Texas law if "(1) the resulting damage was 'highly probable' because was it was 'the natural and expected result of the insured's actions,' [or] (2) "the insured intended the injury . . . ." Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Puget Plastics Corp., 532 F.3d 398, 402 (5th Cir. 2008) (quoting Lamar Homes, Inc., 242 S.W.3d at 8). Lechner alleges that defendants directed him to inflate a tire to a "dangerous and hazardous level" with the "intent to injure [him]." Dkt. # 39-1. As the NorthStar defendants have pointed out, the Court must look only to the pleadings in the underlying case when determining if PMA has a duty to defend, and Lechner plainly alleges that defendants acted with the

13

intent to injure him. Thus, it is not possible that Lechner's claim against the NorthStar defendants arises out of an accident, and there is no coverage under the Policy as a matter of Texas law.[5]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 39) is **granted**, and Defendants' Cross Motion for Summary Judgment and Brief in Support (Dkt. # 46) is **denied**. A separate judgment will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Judgment on the Pleadings (Dkt. # 37) is **moot**.

**DATED** this 16th day of November, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] PMA has also filed a motion for judgment on the pleadings as to the NorthStar defendants' counterclaim for declaratory relief. As PMA notes, the Court has the discretion to dismiss a counterclaim that merely mirrors the complaint or raises the same factual or legal issues as the plaintiff's claim. Dkt. # 37, at 4. In this case, the Court has found that PMA has no duty to defend or indemnify the NorthStar defendants against Lechner's Parret claim, and there will be no savings of time or resources to the parties or the Court if PMA's motion for judgment on the pleadings is granted at this stage of the case. The Court will enter judgment on PMA's claim and the NorthStar defendants' counterclaim, and the motion for judgment on the pleadings (Dkt. # 37) will be moot.